1979 Huawei Technologies v. Samsung 1979,         1967, 1976, 1977, then 1981, 1989, then 1992.      don't have a clue  at the time of the case. Maybe that mixture is the... maybe you don't know what happened exactly. So if you let me take the second or the last question first. The honest answer is nobody knows for sure. I'm told that it's usually a matter of a few months after the oral hearing. It's also... Which was when? In June? No, no, no. It was in October 30th to November 1st was the oral hearing in the the appeal or what's called the second instance proceeding. And so it can be a matter of some months after that. But just as with decisions from this court or any court, you can say, well, the average is three months after argument. But as you know, the range is quite expansive. And I'm told that in rare cases the second instance court can in fact call for a second hearing if, I imagine, if something comes up in their deliberations. So the answer is nobody knows. And then there's still another court above it. Well, except that there is. But that's discretionary review. That's like a cert process. And it does not affect the finality or enforceability of the Chinese injunctions. Yeah, on that issue it was a little unclear whether or not there was a request for a stay that was then granted or whether the stay is automatic. The stay is automatic when there's this appeal to the second instance proceeding. The other... But if it would go up to the Supreme People's Court in Beijing, is that the right name for it? I think that's correct. Then there would be the right to have a stay if it was sought. Perhaps. Perhaps. But it's certainly not automatic. And the injunction absent some sort of extraordinary order like that would be enforceable at that point. As to the other Chinese litigation, Your Honor, the different cases are in different stages. There are so many because the rule in China is you can only file one patent per case. So if you have 20 patents, you have 20 cases. And there are parallel invalidity proceedings. Invalidity is not decided in the infringement case as in some other countries. There's a sort of an administrative, sort of seems like a re-exam or IPR type process that evaluates validity in China. All of those proceedings are at various stages involving other patents than the two that were decided here. The other update, I suppose, is that in the U.S. case, the briefs reported that the trial was to be in December this month. It's not going to be in December. The earliest possible date is April 1st, and that's contingent on another case set for trial settling before then. Otherwise, the trial date will be September 3rd. So let me ask you, just getting down to this case, what is left before the district court to decide? Because there was some intervening event where somebody withdrew, I guess, the request that the district court determine the actual rate. So what is it that, what is the expectation about what will be tried and what will be decided by the district court? The issues that remain for trial are both sides have alleged infringement of certain U.S. patents by the other side. So you basically have a standard infringement type case. Then both sides have also alleged breach of contract by the other party for failing to comply with their friend obligations. And that's sort of a yes or no proposition at this point. Either your conduct violated your friend obligation or your conduct didn't violate your friend obligation. Huawei's original complaint asked for, it actually sort of paralleled the Microsoft case in the sense that it asked for, essentially asked for a friend license. It said declare the terms. Okay, here's my question. What I don't necessarily understand is even if the court is not asked to come up with a specific rate, in order to do a fulsome breach of contract analysis, which requires determining whether, in this case, each party had submitted fair and reasonable offers, there has to be some sort of number that the district court, or some sort of range that the district court comes up with in order to make that assessment, even if the parties aren't asking for a specific rate. Am I right about that? I'm not sure that's right, Your Honor, because I think and French law governs the terms of the Etsy contract, if you will. And I think, and I believe Samsung has actually steadfastly refused having the district court determine what would be a friend rate or a range of friend rates. And instead, the focus is on... No, but my question is, how does the district court go about deciding whether there's been a violation of friend obligations without having some notion of what a reasonable offer is or is not? Well, I think the overriding question is, has there been good faith, a good faith attempt, good faith negotiations to try to arrive at a license? Now, I think you're right. There has to be some notion. If you come in and you say, okay, my rate is a million dollars per phone, and I was reasonable because I went down twenty dollars each time. Exactly, so clearly the district court has to have some sort of a notion. And district courts have been resolving cases here. I'm sorry, say that again, Your Honor. District courts have resolved cases. Yes, absolutely. Microsoft's an example. There are other examples to be sure. Microsoft was a little bit different because there the court was asked determine friend terms, not just determine whether there has been a breach. Now, and if in fact there was a finding of infringement, say, of Huawei's patents, and that there would have to then be a damages assessment, right? Correct. Or an assessment as to whether an injunction were appropriate. And as a defense to those positions, then there would be the right to assert violation of the friend obligations, correct? Well, I think, certainly focusing on the U.S. case and U.S. patents, if you sought an injunction, I think a defense that you fail to comply with friend would be a defense to that. As to damages, I think the friend comes into the damages aspect, not as a defense so much, but as kind of the measure. As the measure, exactly. So, I mean, that's what I'm confused. You've got your friend on the other side arguing that no one's ever allowed to, no third party can decide what the friend number is because it's too complicated, and yet this would seem to leave it in the hands of a jury. Well, obviously, we don't disagree with that position. It's our position that... Wait, don't disagree with what position? With the position that Judge O'Malley... Oh, no, with the position that no court or jury can decide on a friend rate or friend terms. We don't agree with that. It's our position. Courts have been doing it. But is there a difference? I mean, everybody's throwing words around. Is there a difference between the two sides in terms of what the scope of the arbitration would be? And, second part, is there a difference between saying that a court is going to come up with a friend rate or assess the reasonableness of a friend rate and the cross-license issues that are at stake? I think on the... on that one, there... well, there's clearly a difference between... in the abstract, there's a difference between setting a rate and all the other terms you might have. But there's really no... there's really no issue about other terms here. You know, which patents are going to be licensed? What are the ones where you've declared that they're standard essential? What products are covered? Is there any dispute over essentiality? I believe that Samsung has challenged whether particular patents are, in fact, essential. And, in fact, I think their view is that you go patent by patent, even if there are thousands of them, and decide each of those individually. Our view is that that's not what the friend obligation contemplates at all. What it... good faith negotiations is you don't put the... every party to the burden of litigating every single patent in every single country where you may have a patent. Now, I... the first part of your question, Your Honor, I think had to do with... do the parties disagree about the scope of... Right, because you're saying you're ready to go to arbitration, and you were ready to go, and they were resisting arbitration. Are we all talking about the same thing here? Well, I think we are, because their position is that it would be irreparable harm for them even to be subjected to arbitration. Again, going back to this notion that nobody other than the parties themselves can decide on what are fair and reasonable cross-license terms. You know, and as I think Your Honor... So, when they... how come you agree? Didn't Huawei agree to the court was supposed to decide the rate? We did. I thought you... So, why did you... I mean, your view seems to be that, no, one, third parties can decide it, and two, yeah, third parties should. So, why do you agree to that? I'm not trying to ask you confidential stuff. Oh, no, no, and I... And I won't reveal any confidential stuff. But the reason was to try to simplify the proceedings before the district court. I think there were possibly thirty issues raised on summary judgment and motions in limine. Samsung was taking the position that the court absolutely was without power to decide this unless they consented and they refused to consent. So, in view of that, it was basically, we decided this is not the hill we want to fight on. And plus, you know, at that point, we already have a determination from the Chinese court on the FRAND issues, that our conduct complied with FRAND, theirs did not, and therefore we were entitled to an injunction in China, against infringement in China. And so there's no... We would have loved to have the district court decide the issue. That's what we pled in our complaint. But the injunction, the arbitration you were talking about in China, the scope of it, was it limited to the two patents that were at issue in China? No, the... Or the whole thing? The FRAND issues and the arbitration we proposed in connection with the Chinese proceeding was for a global cross-license between the parties to resolve the entire FRAND dispute between them. The Chinese injunction relates to two patents, but they're both standard essential patents in China. But the Chinese court said that it would, that the injunction would go away if there was a license. Did they specify what kind of license it had to be? Well, the Chinese court found, and this is at appendix pages, I think, 55, 41, through 46, the Chinese court went through Huawei's offers and said, these offers complied with FRAND. And so Samsung could accept one of those offers and that would create a license that then would... Could or could have? Now that the appeal and the injunction is affirmed, can Samsung come in and say, OK, now I'm ready to arbitrate or come in? Or is it all... Does Huawei hold all of the cards? Even if Samsung came in tomorrow and said, we're ready to arbitrate once the decision is final, it's no longer open, right? Huawei still wants a FRAND... No, no, no, I'm asking about what the injunction, at least. Oh, well, the absence of some movement by the parties to arrive at a negotiated resolution, a license... Is it fair to say that if the injunction is in place, what the deal is, is absent Huawei agreeing to some alternative, right? Well, no... Because even if Samsung comes in and it says, OK, I'm ready to negotiate or OK, let's go to arbitration, does Huawei not, under the current injunction we're talking about, have the power to say too little, too late, we're going for our injunction? Huawei does have that power. I will represent to the court that Huawei still wants a negotiated resolution to do this. And I think you already have represented to us. I mean, you'd be bound by your representations to us that say you still stand ready, willing and prepared to go forward with a neutral decision-making. Well, we do, but let me express a caveat. As Samsung made clear in its briefs in this court, it has steadfastly refused even to contemplate that possibility. If there is a way to have an arbitration that will really not just be another opportunity for delay, but that will actually produce a FRAND license, we're all for it, but the signs are not encouraging because the Chinese court went through five years of stalling by Samsung. It articulated kind of month by month what was going on. But where we are in this case is, leaving aside the injunction, you went to court because you're trying to push them to resolution and you're going to get your resolution. It might take now another year or so to get a resolution in terms of who's violating FRAND and what the FRAND right should be, right? Well, I don't think it's going to take another year. I suppose the Chinese case... No, I'm talking about the U.S. case. Oh, yeah, the U.S. case, sure. We could have to wait until September for a trial and then, you know, the judge will presumably take certain things under advisement, so sure, it could be another year. And in the meantime, we've got this injunction against an order entered by a Chinese court that clearly had jurisdiction and that does not affect, it doesn't cut off the district court's ability to decide certainly any of the issues that are left before that court. So it's not at all like Microsoft, where it would have prevented the district court from deciding the issues before it. Here, it would not. I'm a little nervous about talking about some of this stuff because I don't want to... So if I go in a direction that you think is beyond the confidentiality, but isn't it the case that the district court surmised that as a practical matter, the conclusion is unavoidable that if the Chinese injunction goes into effect, this case is going to be necessarily forced to go away? No, I don't think that's true, Your Honor. Not when you think about what's left. We've got cases, we've got the question of infringement of U.S. patents and past damages, and we've got the question of... Would the breach of contract question still remain open? It would, I think, because the breach of contract question is, has the conduct up until now, it's not... A working license in the U.S. is no longer on the table. That's been taken off the table in the U.S. case. So what we've got is, has their conduct up until now breached the FRANT commitment? Now, the Chinese court has held that it doesn't. We think certainly once that's affirmed, that ought to have preclusive... It does. I'm sorry? They said it does breach the FRANT commitment. Their conduct breaches the FRANT, right, and ours does not. Correct. Once that's affirmed, we think it should have preclusive effect, but that's for the district court to decide, and it can still decide the breach of contract claims that are left pending before it. So even as a... But that conclusion is not a given. It might not necessarily have preclusive effect. Well, we think it would, but sure, it's ultimately for the court that's making the decision to decide what to give preclusive effect to, certainly. I see my time is up. Have I answered your questions, Your Honor? Yes, yes. Thank you. We'll reassess in the final time. Let's hear from the other side. Good morning, Your Honor. Charles Verhoeven. May it please the court. The decision below on the injunction... Can you just tell me, practically speaking, when you have two parties that can't negotiate a FRANT license, how it's supposed to happen? Well, there's all different types of ways for it to happen. You could file infringement actions, which has happened in this case. But not to get an injunction, to actually get a cross-licensing rate. Because that seems to me to be the underlying goal of the FRANT commitments, is to avoid all of this collateral litigation and all these infringement conditions and get parties that are standard essential patent holders to agree to fair and appropriate terms. I agree with that. I'd re-characterize it. I think the goal is that people not sue for injunctions when they have put in play their technology into a standard. Wait, wait. There's two sides to this. So, the patent holder agrees to a FRANT commitment, the implementer is the third-party beneficiary of that commitment, and in turn has an obligation to also comply with FRANT. So, if you choose to use the essential patents as part of the standard, or you choose to use the standard, you have an obligation to come to the table. Right. And what I understand the Chinese court found is that Huawei continually offered a license and Samsung refused to come to the table for, what, seven years? Your Honor, we have a completely different view of the facts in terms of those negotiations. But can you go back to Judge Hu's question? Isn't it the intent? This is supposed to end. The parties are supposed to agree on some number, and if they can't do that, somebody has to impose it. You have a sentence in your brief that says, no arbitrator is suited to decide all the necessary and disputed questions of business planning, et cetera. How can that, there's never any basis for question? There is no obligation, I'm sorry. Yeah? There's no obligation under ETSI to license your entire portfolio to a competitor. That's not an obligation. The ETSI obligation is you can't seek an injunction unless you're operating in accordance with FRANT. That's the whole point of the declaration that gets made. And the whole point is we deal with damages with these patents. Can you just clarify, when you're talking about your entire portfolio, are you talking only about standard essential patents or other patents that you think aren't standard essential? I meant standard essential, Your Honor. It could be others, if the parties agree to it. But the obligations I'm talking about... Let's leave aside the other ones, because I thought that was a little bit of a complicated factor. I'm sorry, I missed that. Leave aside the potentially non-standard. Yes. I thought that might have been a complicating factor. If we're just talking about standard essential patents, and you've offered them as standard essential patents, why aren't you obligated to license them on FRANT? You are. And what's happened here... I thought you just said you weren't obligated to license your entire standard portfolio. Well, I take your point, Your Honor. I take your point. Maybe this is oversimplifying, but it seems to me the whole point of this FRANT stuff is to avoid all of this messy litigation about infringement, validity, and the like, in terms of the first obligation is for people that have them to attempt to negotiate a fair and reasonable rate for licensing them. And if either party... And I know you both have your different views of the facts. If both parties or one party doesn't follow through that, doesn't somebody have to resolve what that fair and reasonable rate is? Somebody has to resolve whether there's a breach of FRANT. And... How do you decide whether there's a breach of FRANT unless you establish what some fair and reasonable rate is? You have to... Exactly. Exactly. So you agree that some neutral third party, if the parties are unable to do it, has to decide the rate. The thing we're talking about with the arbitration is non-financial terms, where, for example, if you're a businessman negotiating... These contracts are like for 10 years or 8 years. They're long term. And when you're negotiating them, you have to... As a business person, you have to make predictions about what technology is going to come in the future and what's not. And so there's a lot of business judgments that go into... But you've participated in a lot of arbitrations already in these kinds of cases, as have many other large corporations. I mean, there's all kinds of arbitrators who do complex business negotiations. The whole point is to have the parties sit down and lay out what the business considerations are. Right. And then someone to make a decision because you can't just go forever. Right. I agree. So what we have here is, while we made a tactical decision, when it filed this without any notice to us, it filed these Chinese actions seeking only injunctions on SEPs in its hometown. And a day before, filed a Northern District case. Well, even the District Court conceded it wasn't really a day before. Well, the Court of Appeals conceded it wasn't really a day before, and threw that issue off the table. So let's assume they're filed on the same day. Okay. And in the U.S. case, they're saying, court, the very theory that we're talking about, Samsung breached FRAN, so therefore we want declaratory relief that Samsung cannot get an injunction worldwide based on that contract breach. And that's the issue before. But that has to do with you licensing your patents, not them licensing their patents. Well, they're both intertwined because when you make a FRAN declaration, there's a box you check that says, you're only making it if the other side is also FRAN. And I think you alluded to that. And so both those issues are joined, below, they're going to be decided. And the only point of this- No, no, no. It's possible, given that there's usually a range of FRAN reasonableness, that both sides could be compliant with their FRAN obligations. That's right. Vis-a-vis their own obligations, but not being compliant with their FRAN obligations vis-a-vis the other side's patents. It's a possibility. Yeah. Right. But if I could just get back to, this injunction is very narrow. It's not overturning the Chinese court. It's not doing anything like that. Which injunction? We've got several injunctions. The anti-suit injunction. Okay. All right. All the anti-suit injunction does, or all it's about, is the appropriate timing of a possible remedy. It's not second-guessing the Chinese courts. What is it that gives the district court the right to decide the question before the Chinese courts do? When the same question is presented to both, why doesn't the Chinese court have the authority? They have the authority. They have the authority, and they are pursuing it. This is only about the remedy of injunction. That's it. It's the only thing. And the only thing this court said was ... It's a remedy that you have the ability to undo if you choose to come to the table. Well, if they enforce the injunction, then we'll have to agree to their terms. That's called patent holdup. No, you don't have to agree to their terms. They've already said that they would allow a third party to analyze this. Which would deprive this court of its jurisdiction, which violates ... Of its jurisdiction to do what? You've already said this. You already said the district court has no authority to set a number. So why is letting ... The breach of contract claims, Your Honor. The breach of contract claims. What will happen if this gets enforced, and I'm not going to go into the confidential information. It's in the record. But Samsung will have no choice. It's not going to shut down all its facilities in China. And so it'll have to ... So what is the court going to decide here? What is your view? You took off the table them coming up with a rate. They took off the table them coming up with a rate. Voluntarily. You argued that nobody could do it. Now, you've also separately argued that somehow the damages would be sufficient, which means you theoretically think a jury can do it, even though a complex arbitrator or a district court judge can't do it. With respect, Your Honor, I don't think we argued that nobody could do anything. But what we're pointing to is these business judgments that should be made by private parties negotiating, rather than having a third party ... Can you just tell me, answer just what you contemplate the district court being able to decide? Rule on the breach of contract claims. Saying what? He has to decide whether or not Huawei has complied with its brand obligations, and then he has to decide whether Samsung has. Yes. And in doing that, does he not have to put some sort of dollar value or range on the portfolio of set patents for both of those? I don't know that it's necessary, but you definitely would consider ... Well, how does he decide if the offers were ... I mean, it was reasonable. Don't you look at whether there are other licenses, and you come up with some range, right? You look at different things. You look at different licenses. By the way, the most important license in this case was withheld by Huawei from China. Okay, but before we get into the details of this case, so what is the district court going to decide? Breach of contract on both sides. And the reason those claims are in place ... And therefore, that conclusion is going to include what? I'm sorry? Whether or not somebody breached their contract or failed to comply with FRAN because their offers were unreasonable. Right, and then the result of that, as pled in their complaint by Huawei against us, on the same theory, is that you can't seek injunctive relief. There's no dispute that if you're not FRAN, both sides agree, you can't seek injunctive relief. So this is about ... Right, but there's also a pretty broad understanding among everybody who looks at these questions that if you do ... If you, as the implementer, refuse to participate and comply with your FRAN obligations, then injunctive relief is available. No, well, it gets complicated, but you have to show that you complied, too. Well, so what happens if the district court, in this case, ultimately decides that you both breached your contracts and ... No injunctions. Right. But doesn't something then have to happen to force you to actually reach a FRAN rate? Because otherwise, it basically leaves the playing field that the implementers can just keep on doing things and keep on reaping profits and not paying out FRAN rates. No, I don't think that's the case, but the issue that's joined here is about injunctive relief. Well, so is the question ... There's no damage assigned. They have to go through patent infringement claims, and if they show patent infringement, that they're going to get a reasonable royalty rate? These are different issues, Your Honor. I understand they're different issues, and I'm perhaps speaking at too broad of a practical global level, but it seems to me that all of this collateral litigation over injunctions and the like is just allowing both sides to try to gain influence over each other in negotiations when what should really be happening is you two should be setting down a negotiating FRAN rate. I agree 100 percent. Neither of you seem to be willing to even explain how that could be done. We're doing it in settlement talks right now, okay? It's going to ... We're trying to do it. Both sides are trying to do it, Your Honor. That's seven years in the making. I mean, you keep saying that, but there doesn't seem to be any evidence of it. Well, again, this is not before the court, but we have a very long set of facts that we could go through about how Huawei has changed its foundational assumptions in every single one of these proposals they've made, and they make a proposal that says it's all patents, not just SEPs. They make a proposal that says it's just SEPs. They make a proposal that says it's just 4G. They change it every single time, except the one thing they don't change is they want 1.5 percent. That's their standard rate. I mean, they argue in their bravery that that's not true. Well, the actual negotiations are confidential, but so I can't go into the he said, she said. There's a lot of debate back and forth about whose set of facts is accurate. The reality is what we have is one court having looked at whatever set of facts saying that Huawei complied with its brand obligations and you did not, right? And we have another court who hasn't looked at those facts. I disagree. I disagree. I don't think the Chinese court decided to breach a contract. In fact, if I could find it ... It said as a precondition to determining whether an injunction is appropriate, it had to conclude whether or not Huawei complied with its brand obligations. Yeah, and what does that mean under Chinese law? I can't figure it out. There's no one that the Chinese court didn't do any analysis of numbers, by the way, of what would be brand and not brand. All they did was talk about subjective bad faith. So, look, I'm not trying to second guess the Chinese court. All I'm saying is Huawei asked this court to decide breach of contract. We joined the issue with our counterclaim and the district court should be allowed to decide those issues without interference from an injunction that would require settlement in this case. This is directly on point from Microsoft versus Motorola. But at a certain point, this all just ends up to being delaying. I mean, the district court is going to take another year and a half to decide that breach of contract claims. One or both of you are going to appeal from that. And all the time, you're going to be selling your phones, you're going to be manufacturing their phones, and they're not going to be getting their patent licenses paid. I mean, it can't be that ... We've asked the court to decide this issue in this case. So has Huawei. So the idea that it's going to go on and on forever ... Not to decide the license number, you specifically said ... Right, but the issue here is whether the injunction is appropriate. Look, we're just trying to get a decision from the court in the US. That's it. We're not trying to tell Chinese courts what to do. But Huawei, having initiated this case simultaneously, as it were, has invoked this court's jurisdiction. We have joined the issue on breach of contract and asked the district court in the United States to decide this issue. Nobody says that we don't have the right to go to the district court and ask for these decisions to be made. Microsoft versus Motorola says that the Etsy ... Microsoft versus Motorola is not anything like this case. In Microsoft versus Motorola, the court specifically found there was bad faith in going to the other court. And here, this court specifically found that the district court found it's not. In Microsoft versus Motorola, one of the issues was that in Germany, the court refused to even take into consideration friend obligations and how those came into play in determining whether an injunction should issue. And here, the Chinese court did. In Microsoft versus Motorola, the court said at least three times, these are two US companies, so we have an interest in this. Now, we do not have either company being a US company. And there's like seven different grounds and distinctions. Well, everyone that you've raised with respect is irrelevant to the Gallo factors. And that's what we have to apply here. It's Ninth Circuit is controlling precedent, it's undisputed. And we have the three Gallo factors. One, would it be dispositive? Breach of friend will be dispositive of the injunction issue. It's holding Microsoft versus Motorola. It's the very same fact pattern on SEPs and hold up. And so that's met. Public policy, there's a public, there's a district court found, there's a public policy or the public policy factor. The district court found two public policies. One, for the court not to have interference with its jurisdiction. Two, policy against patent hold up. It did not find the second. It specifically did not find the second. That's a misstatement in your reference. It's a misstatement in your reference. It specifically did not find the second. And it said that the governmental policy seems to go both ways. There's also a strong governmental policy, and he cites Dellerine for the proposition that we don't allow implementers to hold out and not participate in their friend obligations. So he said, but the real public policy here, the one I'm relying on, is I get to decide this case. That's what he said. He did not say that there was a public policy against injunctions and S&Ps. I can go back and, I mean, what I was referring to is page 16. And the Court of Appeals did not rely on that public policy either. Oh, you're talking about the Microsoft case. No, I'm talking about, I'm sorry, in this particular case, the district court refused to rely on that policy. Well, in page 16, the analysis is on page 16 through 17, A, 16, appendix 16 through 17. Yeah, look at 17. OK. He goes back and forth. He says there's policy implications on both sides of this deal, but that's not the policy that matters. The policy that matters is whether I get to decide this case. I guess I don't see that. If I could just point to lines, 17 lines 19 through 22, quote, under these circumstances, the Sengen order interferes with equitable considerations by compromising the court's ability to reach a just result in the case before it is free of external pressure on Samsung to enter into a holdup settlement before the litigation is complete. Right, that has nothing to do with whether there's a public policy against any injunction in an SCP context. I guess what I was referring to is the policy against holdup, Your Honor. And there's also a policy against holdout. Yes. A very strong public policy. My only point was the court identified the policy against holdup. The court identified the public policy to preserve its jurisdiction. And the court found that enforcement of the injunction would interfere with its ability to decide the issues that both sides have asked it to decide. And its anti-suit injunction is simply put off the injunction enforcement until I have an opportunity to decide what you, Huawei, asked me to decide. We now know that's what? At the earliest, the trial would be in April. We have to go off the record the district court had when it issued its order. And at that time, the trial date was in December. If the, it's not for the appellate court to change the order based on changed circumstances. They should go down. The order didn't say until my December trial date. It said until I can get a chance to decide that. It left it wide open. Right, but at the time. No limitation on it. Yes, but at the time it was made, there was a December trial date. And everyone expected that that was going to go to trial. Can I ask you just one final question I have on that? I don't understand the import of what the district court said. When I'm page 14, he says, how am I to indicate whether these offers were fran, if they're global portfolios, page 14. Starting at line 17 and just going on and on and on. I'm reading this and I'm thinking, well, the district court judge has just told us it's, he thinks it's impossible for him to resolve the breach of contract issue in this case. Yeah, that's dicta and this doesn't have anything to do with the Gallo factors. He's talking about when he, when he asked, equitable considerations are that it would deprive him of his ability to adjudicate the issues before him. I didn't know how to read the fact that he's kind of telling us. I'm never going to be able to decide. He told us from the beginning, first status conference in this case, the private party should negotiate this. And it doesn't make any sense for either party to go to any court and try to have some court negotiate or, or determine all of these complex things. And I think, I think he's alluding back to his view generally, that that's going to be something that's hard, that, that he thinks should be done privately because it would be hard to do in front of a jury or in front of a judge. But, but again, that doesn't relate to the Gallo factors. He, he, he went on to say, but you have to not enforce this injunction so I can try. So I can do it. So, I don't think that comment is inconsistent with his ruling that he need, that, that enforcement of an injunction would result in taking away his ability to decide what both parties asked him to do because Samsung can't afford to have plants shut down in China, and therefore, if an injunction was enforceable and they intended to enforce it, we'd just cry uncle and do whatever terms they want. Okay, thank you. I'll try to be brief, Your Honor, in view of the hour. Thank you. This notion of, of being forced to accept whatever terms Huawei wants and hold up and all that, there are, there are a number of problems with that. One is, the Chinese court has already decided that these, this would not be a hold up license or a hold up settlement because the offers were frammed. So that's off the table. At least it's off the table if you accord any- How do you respond to his argument that says they didn't really even look at numbers. They didn't even analyze numbers. Well, I don't understand that. If you look at, and I would, would refer to the court to pages, I think it's 5519 through 46, the Chinese court in painstaking detail goes offer by offer. And all those places where it's blacked out, that that's, by the way, was by the Chinese, the Chinese court ordered that, which is why it's that way even in the confidential appendix. Each of those is a number. They're going through each rate for each, you know, each standard and all of that. So how, how counsel can say the Chinese court didn't even consider this and it was just sort of a subjective bad faith thing. It's just completely contrary to this detailed painstaking analysis in that decision. So that's just wrong. And the other thing is that, so let, let's suppose that the injunction finally, the Chinese injunction, sorry, finally caused Samsung to accept what the Chinese court has said would be a frammed license. Even then, that's not going to change the issues that are before the district court unless Samsung wants to abandon them at that point. The, the breach of contract claims are not, again, they're no longer about an ongoing frammed license because that's off the table. It's just did past conduct violate the, the frammed contract and. What's the point of getting a declaratory judgment on that if you have now agreed to an ongoing licensing? Well, there may not be any point, Your Honor. You're right, but that's not the pro, that's a, that's a. I mean, I don't understand why that doesn't, it may not moot it, but it would make it kind of silly for both sides to keep spending money on litigation. Well, it, it might accept that. It would moot the infringement cases, right? Well, it would moot the infringement cases if Samsung agreed that those, in fact, were standard essential patents, but they're challenging that. So, unless they gave up on that, we'd still have to litigate that. Well, nobody's agreed to an ongoing license at this stage. No, no, but no, I was, I was, I think. So, are you saying that you would agree to a license with Samsung now that was only backward looking? No, no, no. What I'm saying is that the district court case at this point is all backward looking. It is, has infringement occurred up till now? If so, what are the damages? Has a breach of contract occurred up to now? If so, are there any damages? For example, in the Microsoft Motorola case, Your Honor, there was a damage claim with the breach of friend obligation, because Microsoft had taken action to, to prepare for the eventuality that the German injunctions might be enjoined. I don't, we don't know whether there'd be such a claim here, but in theory, it might not just be this declaration of breach or no breach. There could be a damages type remedy. So as a practical matter, it may not make a difference, but it is not depriving the district court of jurisdiction to decide an issue the party still wanted to decide. If Samsung decides it doesn't want the court to decide the issue, well, that's fine, but that's not the kind of deprivation of jurisdiction that Gallo or these other cases are talking about. So, just a couple of other very quick points. It's true that the Chinese court didn't decide breach of contract, because the breach of contract claim wasn't presented there. But all of the friend issues were fully litigated, as the district court acknowledged. The Chinese court issued the injunctions there, because it found that Huawei had complied with friend, Samsung had not. That decision is entitled to respect from the U.S. courts. That's what the comedy principle is all about. And this injunction violates that principle. Thank you. Thank you, Your Honor. It's not both sides, the case is submitted.